IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTURO AGUILAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22-cv-01043 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| DR. ALMA MARTIJA, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

While he was in pretrial detention at the DuPage County Correctional Facility ("DuPage County Jail"), Plaintiff Arturo Aguilar began experiencing gastrointestinal issues. He has brought the present action alleging that the jail's physician, Defendant Dr. Alma Martija, and a jail health administrator, Defendant Nury Marcelo, failed to provide him with adequate medical care for his symptoms and refused his repeated requests to see a gastrointestinal specialist. Based on those allegations, Aguilar's First Amended Complaint ("FAC") asserts claims under 42 U.S.C. § 1983 and Illinois state law against Dr. Martija and Marcelo, along with Defendants James Mendrick, in his official capacity as Sheriff of DuPage County, the DuPage County Sheriff's Office, and DuPage County. Defendants have filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 48.) For the reasons that follow, Defendants' motion is granted in part and denied in part.

### BACKGROUND

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the FAC as true and views those facts in the light most favorable to Aguilar as the non-moving party.

*Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The FAC alleges as follows.

Aguilar was being held as a pretrial detainee at the DuPage County Jail when, in October 2020, he developed a urinary tract infection. (FAC ¶¶ 3, 13, Dkt. No. 41.) He saw Dr. Martija, a DuPage County Jail physician, for treatment and she prescribed him an antibiotic. (*Id.* ¶¶ 4, 13.) Apparently as a result of taking that antibiotic, Aguilar began to suffer from abdominal pain, uncontrollable diarrhea, loose stool, and severe acid reflux. (*Id.* ¶ 14.) Those symptoms, in turn, made it difficult for him to sleep or go about his normal daily activities, such as exercising and self-care. (*Id.*)

During an appointment in late November 2020, Aguilar informed Dr. Martija of his symptoms, and she prescribed him Pepto Bismol. (*Id.* ¶ 15.) Even though the Pepto Bismol was ineffective at reliving his symptoms, Dr. Martija again prescribed it for Aguilar a few weeks later. (*Id.*) Still, Aguilar's symptoms persisted, and by December 2020, he also began to experience inflammation in his abdomen, dehydration, and headaches. (*Id.* ¶¶ 16–17.) Nonetheless, Dr. Martija declined to order diagnostic assessments, such as an endoscopy or colonoscopy. (*Id.* ¶ 16.)

Near the end of January 2021, Aguilar's condition worsened to the point that he was experiencing diarrhea up to nine times a day and a persistent burning on the left side of his abdomen. (*Id.* ¶ 19.) Using jailhouse resources, Aguilar conducted his own research regarding his symptoms, which led him to request that Dr. Martija refer him to a gastrointestinal specialist. (*Id.* ¶¶ 20–21.) Although Dr. Martija told Aguilar that she would schedule him for an appointment with a specialist, she failed to do so promptly. (*Id.* ¶ 21.) As a result, Aguilar raised the matter with Marcelo, a DuPage County Jail health administrator. (*Id.* ¶¶ 5, 22.) At some

point, Aguilar met with both Marcelo and Dr. Martija to complain that he had not received an appointment with a specialist, but neither Marcelo nor Dr. Martija took any immediate action to schedule an appointment for Aguilar. (*Id.* ¶ 22.) Marcelo instead prescribed him a liquid diet and a probiotic. (*Id.* ¶ 23.)

For about a week, the prescribed diet and probiotic provided Aguilar some relief for his symptoms. (*Id.*) When his symptoms returned, he again asked Marcelo to schedule an appointment with a specialist, but his request was denied. (*Id.*) Sometime later, Dr. Martija wrote Aguilar a prescription for Imodium, an over-the-counter antidiarrheal. (*Id.* ¶ 24.) When the Imodium proved ineffective at alleviating Aguilar's symptoms, Dr. Martija prescribed a probiotic and omeprazole, both of which are meant to treat mild forms of diarrhea and acid reflux. (*Id.* ¶ 25.) Again, the treatment provided Aguilar with negligible relief. (*Id.*)

On May 27, 2021, Aguilar was convicted of the charges underlying his pretrial detention and sentenced to a term of imprisonment. (*Id.* ¶ 26.) Around that time, Dr. Martija prescribed Creon, a medication meant to help with food digestion, for Aguilar. (*Id.* ¶ 27.) But that medication actually caused Aguilar's symptoms to worsen. (*Id.*) Finally, on July 15, 2021, Aguilar was able to see a gastroenterologist and underwent a colonoscopy and an endoscopy. (*Id.* ¶ 30.) Shortly after his appointment, Aguilar was transferred to Stateville Correctional Center to serve his remaining term of imprisonment. (*Id.* ¶ 31.)

In the FAC, Aguilar asserts claims under 42 U.S.C. § 1983 against Dr. Martija and Marcelo, alleging that they provided constitutionally inadequate medical care in violation of the Eighth Amendment (Count I) and the Fourteenth Amendment (Count II). Count III of the FAC asserts a § 1983 claim against Mendrick and the DuPage County Sheriff's Office, seeking to hold them liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Count IV sets

forth a claim for indemnification against Mendrick, the DuPage County Sheriff's Office, and DuPage County. And Count V asserts a state-law medical malpractice claim against Dr. Martija and Marcelo.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Here, Defendants argue that the FAC should be dismissed in its entirety because it fails to state a single viable claim.

**I.      Section 1983 Claims**

The Court begins by considering whether Aguilar has sufficiently alleged his § 1983 claims. As claimed in the FAC, Defendants' deficient medical care of Aguilar's gastrointestinal issues began while he was being held as a pretrial detainee and continued after he was convicted and sentenced on May 27, 2021. Post-sentencing, Aguilar's status was that of a convicted prisoner, and therefore his claims were subject to the Eighth Amendment's prohibition on "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Lewis v. Downey*, 581 F.3d 467, 474 (7th Cir. 2009) (determining that a detainee's Eighth Amendment rights vest only upon the imposition of his sentence). In particular, the Eighth Amendment "proscribes 'deliberate indifference to serious medical needs of prisoners' amounting to 'the unnecessary and wanton

4

infliction of pain.'" *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

On the other hand, a different standard controls Aguilar's claims during the time he was held as a pretrial detainee. Unlike a convicted prisoner, a pretrial detainee has "not been convicted of anything, and they are still entitled to the constitutional presumption of innocence." *Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018). Thus, the Eighth Amendment's prohibition on the infliction of "cruel and unusual ***punishments***" is not properly invoked as to them, *id.*; "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n.40 (1977)). Of course, pretrial detainees "are also protected from certain abusive conditions. The difference is that the claims of state detainees being held on probable cause arise under the Fourteenth Amendment's Due Process Clause." *Miranda*, 900 F.3d at 350.

Under both the Fourteenth Amendment and the Eighth Amendment, a claim of constitutionally inadequate medical care requires that the plaintiff first plead an objectively serious medical condition. *Stockton*, 44 F.4th at 614; *Gonzalez v. McHenry County*, 40 F.4th 824, 828 (7th Cir. 2022). Once an objectively serious medical need has been shown, the Court considers the reasonableness of the defendant's conduct. At that point, the analyses diverge: whereas for the Eighth Amendment, the Court asks whether the defendant was "deliberately, that is subjectively, indifferent," *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (internal quotation marks omitted), for the Fourteenth Amendment, the Court asks only whether the defendant's conduct was objectively unreasonable, *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020). Because the Fourteenth Amendment's objective unreasonableness

5

standard is less demanding than the Eighth Amendment's deliberate indifference standard, *Jones v. Barber*, No. 17-cv-07879, 2020 WL 1433811, at *3 (N.D. Ill. Mar. 24, 2020), the Court will first consider the allegations as to Defendants' entire course of treatment under the deliberate indifference standard and turn to the Fourteenth Amendment analysis only if necessary; if Aguilar successfully pleads that Defendants were deliberately indifferent in providing him care, it necessarily follows that their alleged treatment was also objectively unreasonable.

      The subjective element of the Eighth Amendment deliberate indifference inquiry requires the plaintiff to prove that the "prison official acted with a sufficiently culpable state of mind. A negligent or inadvertent failure to provide adequate medical care is insufficient to state a [§] 1983 claim." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). For a prison official to be deliberately indifferent, he "must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Whiting*, 839 F.3d at 662. "While evidence of medical malpractice often forms the basis of a deliberate indifference claim, the Supreme Court has determined that plaintiffs must show more than mere evidence of malpractice to prove deliberate indifference." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Estelle*, 429 U.S. at 104–05). Instead, a medical professional is liable only where he makes "a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Thus, "where evidence exists that the defendant[] knew better than to make the medical decisions that [he] did," the claim should go to a jury. *Petties*, 836 F.3d at 731. By contrast, "a mere disagreement with the course of the inmate's medical treatment does

6

not constitute an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1991) (internal quotation marks omitted).

At least for purposes of the motion to dismiss, Defendants do not contest that Aguilar's constellation of gastrointestinal symptoms, taken together, constituted an objectively serious medical need. They do, however, contest that they exhibited deliberate indifference or were objectively unreasonable in their treatment of those issues. A defendant's liability under § 1983 requires that they be personally involved in violating a plaintiff's constitutional rights. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003); *see also Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) ("The inmate must show an objectively serious medical condition that each named defendant responded to with deliberate indifference." (internal quotation marks omitted)). Thus, the Court considers the sufficiency of Aguilar's allegations of deliberate indifference as to Dr. Martija and Marcelo, respectively, and then turns to consider whether Aguilar has successfully pleaded a *Monell* claim as to Mendrick and the DuPage County Sheriff's Office.

### A. Dr. Martija

According to Aguilar, Dr. Martija displayed deliberate indifference to his consistent complaints of gastrointestinal distress by persisting in the same ineffective conservative treatment plan while waiting several months to schedule an appointment with a gastrointestinal specialist, despite his multiple pleas for specialized care. Dr. Martija, however, argues that even accepting the allegations of the complaint she was not deliberately indifferent because she regularly responded to Aguilar's complaints and, when one course of treatment proved ineffective, she shifted course and tried a new approach. Thus, Dr. Martija asserts that Aguilar's own allegations demonstrate that she did not disregard a substantial risk to Aguilar's health.

7

At this stage in the case, the Court finds that Aguilar's allegations suffice to plead Dr. Martija's deliberate indifference to his gastrointestinal issues. For two months, she relied on over-the-counter medications like Pepto Bismol even as his symptoms worsened to the point that he was having diarrhea up to nine times a day. In the face of such serious and uncontrolled symptoms, it should have been readily apparent to Dr. Martija that Aguilar was not responding to a conservative treatment plan and a different course was necessary. *See, e.g.*, *Machiote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) ("Persisting in a course of treatment known to be ineffective may support an inference that a medical official recklessly ignored an inmate's serious medical condition."). As alleged, at minimum, the prolonged and debilitating nature of Aguilar's conditions should have alerted Dr. Martija that Aguilar's issues were not transitory and that she needed to undertake some diagnostic assessment. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (holding that a jury could find a prison doctor to be deliberately indifferent to the plaintiff's tooth pain where she was unable to explain its cause or effectively treat it with pain medication yet refused to refer the inmate to a dentist). Yet she made no effort at diagnosing Aguilar's condition and continued to rely on over-the-counter options that, save for a fleeting week of respite, provided Aguilar little relief. *See, e.g.*, *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("Although the defendants provided [the plaintiff] pain medicine, a medical professional's actions may reflect deliberate indifference if he chooses an easier and less efficacious treatment without exercising professional judgment." (internal quotation marks omitted)).

Notably, Dr. Martija herself allegedly recognized in late January 2021 that Aguilar would benefit from an appointment with a gastrointestinal specialist and promised him that an appointment would be scheduled, but then took about six months to arrange for such a visit

despite Aguilar's repeated requests. These allegations suffice to plead Dr. Martija's deliberate indifference, as her intentional or reckless disregard for Aguilar's medical needs can be reasonably inferred from the substantial delay in scheduling the referral that she understood was warranted based on the seriousness of Aguilar's condition. *See Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) ("[I]f the need for specialized expertise either was known by the treating physicians or would have been obvious to a lay person, then the obdurate refusal to engage specialists permits an inference that a medical provider was deliberately indifferent to the inmate's condition." (internal quotation marks omitted)). Meanwhile, Aguilar's symptoms allegedly persisted and worsened.

   Dr. Martija's delay in scheduling Aguilar for an appointment with a specialist is the crux of his claim of deliberate indifference. At the same time, a deliberate indifference claim predicated on a delay in care requires a plaintiff to show that "the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett*, 658 F.3d at 753. Here, Aguilar alleges that he did eventually meet with a gastroenterologist and underwent diagnostic examinations. Yet conspicuously absent from the complaint are allegations concerning whether the gastroenterologist made any diagnosis of Aguilar's condition or whether Aguilar's symptoms improved as a result of the appointment. Defendants contend that Aguilar's failure to include this information requires dismissal of his § 1983 claims. The Court disagrees. It is true that to prove Dr. Martija's deliberate indifference, Aguilar ultimately will have to "offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) (internal quotation marks omitted); *see also Petties*, 836 F.3d at 730–31 ("To show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay

9

exacerbated the injury or unnecessarily prolonged pain."). At the motion to dismiss stage, however, specific allegations to that effect are not required. *Steele v. Wexford Health Sources, Inc.*, No. 17 C 6630, 2018 WL 2388429, at *4 (N.D. Ill. May 25, 2018) ("[W]hether a delay in treatment caused harm is a fact issue not properly resolved on a motion to dismiss."). At this stage, it is enough that Aguilar has pleaded that Dr. Martija failed promptly to arrange for the care she understood to be necessary while Aguilar continued to struggle with painful gastrointestinal issues. *See id.* ("At the motion to dismiss stage, the Seventh Circuit has found allegations . . . of prolonged and unnecessary pain due to a delay in treatment sufficient to plead a detrimental effect." (citing *Gomez v. Randle*, 680 F.3d 859, 865–66 (7th Cir. 2012))). Accordingly, the Court denies Defendants' motion to dismiss the § 1983 claims against Dr. Martija.

### B.    Marcelo

In addition to his treating physician, Dr. Martija, Aguilar seeks to hold Marcelo, the DuPage County Jail's health administrator, liable for his constitutionally deficient medical care. However, the Seventh Circuit has "long recognized that the division of labor within a prison necessitates that non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). Thus, as a non-medical jail administrator, Marcelo is "presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (internal quotation marks omitted). This presumption applies equally to Eighth Amendment and Fourteenth Amendment claims. *See Miranda*, 900 F.3d at 343 (describing the presumption afforded to non-medical officials as a "independent" of the standard governing the claim for constitutionally deficient care).

At bottom, Aguilar's complaints as to Marcelo mirror his complaints as to Dr. Martija. Namely, he alleges that Marcelo disregarded his requests to see a gastrointestinal specialist and instead prescribed him certain ineffective alternative treatments. But, unlike Dr. Martija, Marcelo was not a medical professional and was presumptively entitled to defer to Dr. Martija's treatment plan. To rebut that presumption, Aguilar must show that that the jail official "had reason to know that their medical staff were failing to treat or inadequately treating an inmate." *Eagan*, 987 F.3d at 694 (internal quotation marks omitted). That requires that the plaintiff's "communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety." *Arnett*, 658 F.3d at 755 (internal quotation marks omitted). For Marcelo, it is not enough for Aguilar to allege that he complained to Marcelo that Dr. Martija was refusing to schedule a specialist appointment, since Marcelo had no reason to believe that Dr. Martija's refusal was not a reasonable exercise of her medical judgment. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (rejecting a deliberate indifference claim against non-medical defendants where they investigated the inmate's complaints, sought reports from his medical providers, and relied on those reports in concluding that no further action was necessary). At most, Aguilar's allegations suggest that Marcelo was negligent, and "mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient." *Arnett*, 658 F.3d at 755. His § 1983 claims against Marcelo are therefore dismissed.

### C. *Monell*

Finally, Aguilar seeks to hold Mendrick and the DuPage County Sheriff's Department responsible for the alleged constitutionally deficient care under *Monell*. In *Monell*, the Supreme Court established that a municipality may be liable for money damages under § 1983 only if the unconstitutional act about which the plaintiff complains was caused by: "(1) an official policy

11

adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well-settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

To plead *Monell* liability successfully, a plaintiff must assert more than "the legal elements of the various claims . . . asserted;" instead, he must set forth factual allegations that contribute to the plausibility of the *Monell* claims. *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011). Yet Aguilar's complaint contains no well-pleaded facts in support of his *Monell* claim and instead states that Aguilar "believes that he will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." (FAC ¶ 36.) "Although *Monell* claims may proceed with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing." *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016). Here, Aguilar simply speculates that he might find evidence establishing one or more of an official policy, a widespread practice or custom, or that Dr. Martija and Marcelo acted with final policymaking authority. (FAC ¶ 36.) Such speculation fails to provide Mendrick and the DuPage County Sheriff's Office adequate notice of Aguilar's claim against them. *Taylor*, 2016 WL 3227310, at *4 (dismissing *Monell* claim where the plaintiff's allegations regarding the defendant's policies and practices were "vague and broad, lacking in sufficient detail to put [the defendant] on notice of the claim against it"). For that reason, the *Monell* claim in Count III is dismissed.

## II.   State-Law Claims

Aguilar also asserts a state-law medical malpractice claim against Dr. Martija and Marcelo, and an accompanying claim seeking indemnification from Mendrick, the DuPage County Sheriff's Office, and DuPage County. Defendants argue that the medical malpractice claim (and accordingly the indemnification claim) must be dismissed because Aguilar did not

comply with Illinois's requirement that a physician's affidavit and report certifying the merit of the claims be attached to a medical malpractice complaint. *See* 735 ILCS 5/2-622. Yet, as Aguilar correctly notes, the Seventh Circuit has held that "a complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § 5/2-622." *Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019).

Although not a basis for dismissal under Rule 12(b)(6), the Seventh Circuit nonetheless observed in *Young* that summary judgment can be entered against a plaintiff that fails to comply with 735 ILCS 5/2-622's affidavit and report requirement. It explained:

> Illinois wants insubstantial medical-malpractice suits resolved swiftly. That goal can be achieved in federal court under summary-judgment practice, because Fed. R. Civ. P. 56(b) allows such a motion to be filed "at any time." A defendant may submit a motion with its answer and ask the court to grant summary judgment because the plaintiff has not supplied the required affidavit and report.

*Young*, 942 F.3d at 351. In their reply, Defendants ask that the Court grant summary judgment on the medical malpractice claim if Aguilar does not supply the required affidavit and report. If Defendants follow the process outlined by the Seventh Circuit, that may well prove appropriate. But Defendants have not yet answered or filed a summary judgment motion, so it is premature for Court to address the issue further. For now, since Defendants argue no other basis for dismissal of the state-law claims, their motion to dismiss is denied as to Counts IV and V.

13

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 48) is granted in part and denied in part. The motion is granted with respect to the claims against Defendant Marcelo in Counts I and II, as well as the *Monell* claims in Count III. Those claims are dismissed without prejudice to Plaintiff seeking leave to file an amended complaint that remedies the deficiencies discussed in this opinion. The motion to dismiss is otherwise denied.

ENTERED:

Dated: September 16, 2024

_____
Andrea R. Wood
United States District Judge